FILED

December 8, 2016

TN COURT OF
WORKERS'
COMPENSATION
CLAIMS

Time: 3:10 PM



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT JACKSON

| | | |
|---|---|---|
| PATRICK SIMMONS, | ) | Docket No. 2016-07-0249 |
| Employee, | ) | |
| v. | ) | |
| RHA/TRENTON, INC., | ) | State File No. 83151-2015 |
| Employer, | ) | |
| And | ) | |
| PMA INS. CO., | ) | Judge Allen Phillips |
| Insurance Carrier. | ) | |

---

## EXPEDITED HEARING ORDER FOR MEDICAL BENEFITS

---

This matter came before the undersigned Workers' Compensation Judge on November 22, 2016, upon the Request for Expedited Hearing filed by Patrick Simmons pursuant to Tennessee Code Annotated section 50-6-239 (2016). Mr. Simmons requested medical and temporary disability benefits for an alleged back injury on August 5, 2015. RHA contended he failed to provide adequate notice of his alleged injury and failed to prove causation. Accordingly, the central legal issues are whether Mr. Simmons provided proper notice of his alleged injury and whether he came forward with sufficient causation evidence at this interlocutory stage of the case. For the following reasons, the Court holds Mr. Simmons provided proper notice and that he came forward with sufficient evidence for entitlement to certain medical benefits. Mr. Simmons, however, did not come forward with sufficient evidence, at this time, of any entitlement to temporary disability benefits.[1]

---

[1] The Court provides a complete listing of the Technical Record and Exhibits admitted at the Expedited Hearing in an Appendix attached to this Order.

1

## History of Claim

Mr. Simmons worked for RHA, a residential facility for mentally-challenged adults. Mr. Simmons was a "direct services provider," or "DSP." His job required him to tend to the personal needs of residents, including feeding, bathing, and assisting them to the restroom. On August 5, 2015, at approximately 7:45 p.m., Mr. Simmons was assisting a resident from the restroom back to his chair when the resident began falling. When the resident fell, he pulled and twisted Mr. Simmons' back. There were no witnesses.

Mary Crayton, a co-employee, testified by deposition that she saw Mr. Simmons when she reported to relieve him at 11:45 p.m. (Ex. 7 at 10-11.) Mr. Simmons was leaning against a "dresser" and Ms. Crayton recognized he was "hurt." *Id.* at 11. However, Mr. Simmons did not tell her why he was in pain. *Id.* at 12. Thinking he was suffering from "his diabetes," Ms. Crayton admonished Mr. Simmons to call his wife rather than attempt to drive himself home. *Id.*

After returning home, Mr. Simmons' condition worsened to the point that, on the afternoon of August 6, his wife summoned an ambulance. After transport to Jackson Madison County General Hospital, Mr. Simmons, "told [the] nurse that he was walking a patient yesterday and the patient fell to one side and he had to twist his back a little." (Ex. 1 at 1.) Mr. Simmons added he "didn't start hurting until he got home." *Id.* His pain "start[ed] in right lower back and radiat[ed] to [his] right hip and right knee." *Id.* at 2. The "active" diagnosis was "back pain." *Id.* The record contained no details of an examination.

On that same date, Mr. Simmons' wife sent his supervisor, Eric Yarbrough, a text message to advise Mr. Simmons was to be off work per a physician's orders.[2] (Ex. 6.) A series of subsequent text messages between August 6 and September 24 discussed the provision of FMLA leave papers and inquiries as to Mr. Simmons' condition. There is no mention of a work injury.

Mr. Simmons testified Mr. Yarbrough called to "check on him" on August 6. Mr. Simmons stated he reported the injury to Mr. Yarbrough at that time; Mr. Yarbrough testified he did not.

Mr. Simmons sought care from his primary physician, who referred him for an MRI. The MRI, performed on August 11, was interpreted as showing a right L4-L5 paracentral disc herniation and possible "free fragment." (Ex. 2.) Several

---

[2] The Court notes the first text message was sent at 9:51 a.m. on August 6. This indicates Mr. Simmons sought medical attention at a facility on the night of August 5. There is no medical record of that visit in evidence.

days later, Mr. Simmons again spoke with Mr. Yarbrough, who advised Mr. Simmons would have to use vacation and sick time while off from work. In line with the text messages, Mr. Yarbrough provided FMLA paperwork. Mr. Simmons believed the FMLA paperwork was the paperwork for workers' compensation. (Ex. 11 at 8.)

In early October 2015, Mr. Simmons consulted his attorney. Thereafter, on October 7, he specifically reported his injury of August 5 to RHA. His intent was to "get the correct papers for workers' comp." RHA completed an "Unusual Occurrence Initial Report Form" that noted an accident on August 5 at 7:00 p.m. and that Mr. Simmons reported the injury on October 7. (Ex. 12.) The description of injury was that Mr. Simmons transferred a resident who "sat down abruptly." *Id.* RHA's carrier completed a First Report of Injury on October 13 and noted the same date and description of injury. (Ex. 3.) The First Report included: "[Mr. Simmons] did not report to his supervisor and requested FMLA on 8/11 without telling HR it was due to work related injury. EE has been out of work for almost 2 months; please assign . . . for investigation." *Id.*

On October 16, RHA's carrier filed a "Notice of Denial of Claim for Compensation" and listed as the basis: "Failure to timely report a work incident/injury to the employer." (Ex. 4.) Since that time, Mr. Simmons has not worked.

RHA offered the testimony of Mr. Yarbrough, who denied receiving any notice of an injury until October 7. On that day, Gina Horner, RHA's Human Resources manager, summoned him from a staff meeting to advise him Mr. Simmons had reported an injury. Mr. Yarbrough testified he was "surprised" because Mr. Simmons had been off work on FMLA leave. He noted he had no reason to keep Mr. Simmons from reporting a claim and convincingly testified he would like to "have him back" as an employee. During his two years as a manager, no one had reported an injury to him, but he noted RHA taught employees to report all injuries to their supervisor.

Ms. Horner testified Mr. Simmons appeared on October 7 to request "workers' comp papers." She did not know what he was talking about, to which he replied that "Eric [Yarbrough] knew." She then contacted Mr. Yarbrough, who told her that Mr. Simmons had not reported any injury to him. Ms. Horner knew Mr. Simmons had been off work but did not know of any injury. She confirmed all employees are to immediately report any injury to their supervisor. Ms. Horner described Mr. Simmons as a "good employee" and that RHA would "like to have him back."

3

RHA offered the depositions of three co-employees, who either did not know of Mr. Simmons' injury or learned of it several weeks later. (Exs. 7, 8 and 9.) Mary Crayton did testify that, when she called to "check on [Mr. Simmons]" three days after the alleged incident, he told her he was "hurt at work." (Ex. 7 at 12.) Ms. Crayton did not "have any conversations with anybody else" at RHA regarding this discussion. *Id.* at 14. She heard "nothing" from her supervisor, Mr. Yarbrough, as to why Mr. Simmons did not return to work. *Id.* at 15.

Based upon this proof, Mr. Simmons contended he provided proper notice to Mr. Yarbrough within two or three days of the injury. He argued this case was a "classic example" of a misunderstanding of which benefits were being requested: Mr. Simmons believed he was requesting workers' compensation, and Mr. Yarbrough believed it was FMLA. However, even if he did not timely report, Mr. Simmons argued RHA suffered no prejudice from his reporting approximately sixty days later on October 7. He pointed to the recent case of *Buckner v. Eaton Corp.*, No. 2016-01-0303, 2016 TN Wrk. Comp. App. Bd. LEXIS 84 (Tenn. Workers' Comp. App. Bd. Nov. 9, 2016), which held that a trial court must consider the extent and effect of any prejudice to the employer of late reporting. Mr. Simmons requested a panel of physicians to evaluate his back and temporary disability benefits from October 7, 2015, and ongoing until he reaches maximum medical improvement.

RHA countered that Mr. Simmons did not timely report his injury pursuant to the statutory requirements. It also contended that the current Workers' Compensation Law removed any consideration of "equity" in favor of Mr. Simmons and that, accordingly, the question of any prejudice to the employer did not survive the 2013 Reform Act. It requested Mr. Simmons' claim be denied in its entirety.

## Findings of Fact and Conclusions of Law

### Standard applied

Because this case is in a posture of an Expedited Hearing, Mr. Simmons need not prove every element of his claim by a preponderance of the evidence in order to obtain relief. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). Instead, he must come forward with sufficient evidence from which this Court might determine he is likely to prevail at a hearing on the merits. *Id.*; Tenn. Code Ann. § 50-6-239(d)(1) (2015).

### Notice

4

Tennessee Code Annotated section 50-6-201(a)(1) (2016) requires "every injured employee" to "immediately upon the occurrence of an injury, or as soon thereafter as is reasonable and practicable," to give notice of the injury to their employer and, if the employee fails to do so, "no compensation shall be payable." *Id.* The notice must "state in plain and simple language . . . the time, place, nature, and cause of the accident resulting in injury." Tenn. Code Ann. § 50-6-201(a)(2) (2015). The employee must provide "reasonable excuse" as to why written notice is not given within thirty days of the accident. *Id.*

When the employer raises lack of notice as a defense, the burden is on the employee to show either the employer had actual notice, that he provided notice, or that his failure to give notice was reasonable under the circumstances. *Hosford v. Red Rover Preschool*, No. 2014-05-0002, 2014 TN Wrk. Comp. App. Bd. LEXIS 1, at *15 (Tenn. Workers' Comp. App. Bd. Oct. 2, 2014). Our Appeals Board explained the notice requirement "exists so that an employer will have an opportunity to make a timely investigation of the facts while still readily accessible, and to enable the employer to provide timely and proper treatment for an injured employee." *Id.* Guided by this authority, the Court must determine whether Mr. Simmons rebutted RHA's notice defense.

The Court first finds RHA had no "actual notice" of the injury. There is no evidence that any representative of RHA authorized to receive notice knew of the incident when it occurred.

Second, the Court turns to whether Mr. Simmons provided notice to RHA within thirty days. On this point, Mr. Simmons testified he reported his injury to Mr. Yarbrough, his supervisor, two days later; Mr. Yarbrough denied he did so. The Court finds both men credible. Hence, the proof is equipoise, leaving the Court unable to determine whether Mr. Simmons definitively reported the incident within days of its occurrence. Further, there is no evidence Mr. Simmons reported his injury to any other representative of RHA management within thirty days of August 5, 2015. Accordingly, the Court finds Mr. Simmons did not provide timely notice of his injury to RHA.

Next, the Court finds no reasonable excuse for Mr. Simmons' failing to provide timely notice of his injury. In *Buckner*, the employee sustained an injury on July 21, 2015. *Buckner*, at *3. He was injured at a "specific time and place performing a specific task." He noted, "I hurt my back that night." *Id.* at 11. However, that employee did not report his injury until September 2, 2015, forty-three days later. *Id.* at *3. Under such circumstances, the Appeals Board concluded, "that Employee's excuse for failing to provide timely notice of his

5

work injury was not 'reasonable,' the standard mandated by the legislature in section 50-6-201(a)(1)." *Id.* at *11. Specifically, "this was not a case where symptoms developed gradually over time or were not immediately apparent"; rather, the employee "was immediately aware he hurt his back and shortly thereafter was . . . unable to work." *Id.*

The facts of the instant case are strikingly similar. Like the employee in *Buckner*, Mr. Simmons alleges an injury at a specific time and place while performing a specific task. He testified without doubt that he was injured on the evening of August 5, 2015, while assisting a patient. He reiterated this history the next afternoon at an emergency room. (Ex. 1 at 1.) Thus, any delayed reporting of his injury is not excusable on grounds that his "symptoms developed gradually over time or were not immediately apparent." *See Buckner*, at *11.

However, as instructed by *Buckner*, "the inquiry does not end there." *Id.* Contrary to RHA's argument, the question of whether late notice is prejudicial to the employer did survive the 2013 Reform Act. Specifically,

> Tennessee Code Annotated section 50-6-201(a)(3) provides that the failure to give timely notice of a work-related injury will not bar compensation "unless the employer can show, to the satisfaction of the workers' compensation judge before which the matter is pending, that the employer was prejudiced by the failure to give the proper notice, and then only to the extent of the prejudice."

*Id.* at *11-12 (Internal citations omitted). Because the trial court in *Buckner* failed to address whether that employer suffered prejudice, and if so to what extent, the Appeals Board remanded the matter for the trial court's consideration. *Id.* at *12. Accordingly, this Court will address whether RHA suffered prejudice, and if so, to what extent any such prejudice affects the benefits to which Mr. Simmons may be entitled.

There is scarce Tennessee authority regarding what constitutes prejudice by late notice. However, *York v. Federal Chemical Co.*, 216 S.W.2d 725 (Tenn. 1949), provides an early insight. There, the employee lacerated his thumb but failed to report the injury for two months. Swelling of the digit prompted amputation, and subsequent infection led to death. *Id.* at 726. Because the employee did not provide notice at the time he sought medical attention, the court found it "clear . . . that the employer was prejudiced, owing to the lack of notice, because he was deprived of the privilege of securing proper medical attention in time." *Id.* at 727. Specifically, quoting the court of another state, our Supreme Court found timely notice would have provided "an opportunity not only for a

6

prompt general investigation of the alleged circumstances of the accident but [also] of the employee's story thereof." Further, the employee might have received medical attention to prevent infection. *Id.* Under those facts, the court affirmed dismissal on grounds of inadequate notice. *Id.* at 728.

The logic of *York* extends to our own Appeals Board's finding in *Hosford* that proper notice allows for both expeditious investigation and prompt provision of medical benefits. However, the Board in *Buckner* recognized a forty-three day delay justified consideration of any prejudice to the employer by late notice. This Court must address a sixty-three day delay in reporting by Mr. Simmons.

Regarding the effect, if any, of his late notice, RHA points only to Mr. Simmons' delayed reporting. It provides no facts as to why it was harmed thereby. It argued it could not know what may have happened to Mr. Simmons' back in the sixty days between the incident of August 5 and the date of his reporting on October 7. However, this Court finds, unlike *York*, there is nothing to demonstrate that RHA's knowledge of the incident on August 5, within the statutorily-prescribed thirty days would have changed the course of the claim. Mr. Simmons' MRI of August 11, 2015, revealed a herniated disc; thus, the anatomic lesion at issue was present shortly after the incident.

Likewise, the Court finds Mr. Simmons' description of the event credible. Ms. Crayton corroborated Mr. Simmons' testimony of him being in pain on the night in question. Moreover, the proof shows RHA considered Mr. Simmons a valued employee who is sorely missed at the residence facility. RHA does not view him as an untrustworthy individual pursuing a spurious claim. Further, the Court believes Mr. Simmons' testimony that he believed he completed the proper paperwork and that he mistook what was FMLA paperwork for workers' compensation paperwork. This finding is bolstered by the agreed trustworthiness of Mr. Simmons and the novelty of workers' compensation claims at RHA.

Taken in its totality, the Court finds the evidence demonstrates no prejudice to RHA by Mr. Simmons' late reporting. Accordingly, he has rebutted the notice defense.

*Causation*

Mr. Simmons must show his alleged injury arose primarily out of and in the course and scope of his employment at RHA. Tenn. Code Ann. § 50-6-102(14) (2015). He also must show his injury was caused by an incident, or specific set of incidents, identifiable by time and place of occurrence Tenn. Code Ann. § 50-6-102(14)(A) (2015). Further, he must show, "to a reasonable degree of medical

7

certainty that [his alleged work injury] contributed more than fifty percent (50%) in causing the . . . disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(14)(C) (2015). "Shown to a reasonable degree of medical certainty" means that, in the opinion of the treating physician, it is more likely than not considering all causes as opposed to speculation or possibility. Tenn. Code Ann. § 50-6-102(14)(D) (2015).

Taking the requirements in turn, the Court finds Mr. Simmons established the occurrence of a specific incident on August 5, 2015. He described an incident where he was assisting a resident in moving to a chair when the resident fell forward causing him to twist his back. Ms. Crayton corroborated his testimony to the effect that he appeared in pain when she saw him leaning against a piece of furniture. (Ex. 7 at 10.) The Court finds Mr. Simmons to be credible as to how he was injured and finds his history at the hospital consistent with his testimony. Accordingly, Mr. Simmons established the specific-incident criterion of the statutory definition of injury.

Turning to the "arising primarily out of" requirement, the Court finds Mr. Simmons has not, at this interlocutory stage of the proceedings, established that his injury contributed more than fifty percent to his disablement or need for medical treatment. Mr. Simmons submitted only one hospital record and an MRI report. Neither contains a causation opinion. Thus, the Court finds Mr. Simmons, at this time, has not established that he sustained an injury arising primarily out of his employment.

However, at this Expedited Hearing, Mr. Simmons need not prove every element of his claim by a preponderance of the evidence. Instead, he must come forward with sufficient evidence from which the court might determine he is likely to prevail at a hearing on the merits. Tenn. Code Ann. § 50-6-239(d)(1) (2015); *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). This lesser evidentiary standard "does not relieve an employee of the burden of producing evidence of an injury by accident that arose primarily out of and in the course and scope of employment at an expedited hearing, but allows some relief to be granted if that evidence does not rise to the level of a 'preponderance of the evidence.'" *Buchanan v. Carlex Glass Co.*, No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6 (Tenn. Workers' Comp. App. Bd. Sep. 29, 2015).

Guided by this authority, the Court turns to whether Mr. Simmons came forward with sufficient evidence from which it might determine he would prevail at a hearing on the merits regarding his claim for any medical benefits. As noted,

Mr. Simmons established a specific incident and that he provided RHA notice of his injury. After an employee provides notice of an injury to an employer, Tennessee Code Annotated section 50-6-204(a)(1)(a) (2015) requires an "employer or the employer's agent . . . [to] furnish, free of charge to the employee, such medical and surgical treatment . . . made reasonably necessary by accident." "The injured employee shall accept the medical benefits . . . provided that in any case when the employee has suffered an injury and expressed a need for medical care, the employer shall designate a group of three (3) or more independent reputable physicians . . . from which the employee shall select one (1) to be the treating physician." Tenn. Code Ann. § 50-6-204(a)(3)(A)(i) (2015).

In *McCord*, the formative case on the parties' obligations at the expedited hearing stage, our Appeals Board held:

> To date, there is no proof in the record that Employee's medical condition is causally-related to the alleged work accident. However, whether the alleged work accident resulted in a compensable injury has yet to be determined. Therefore, while Employee has not proven by a preponderance of the evidence that she suffered an injury arising primarily out of and in the course and scope of employment, she has satisfied her burden at this interlocutory stage to support an Order compelling Employer to provide a panel of physicians.

*McCord*, at *17.

In *McCord*, as in this case, the employee established a specific work incident. Likewise, both the *McCord* employee and Mr. Simmons provided notice of the incident. This proof is sufficient to require RHA to provide a panel of physicians to Mr. Simmons. *See McCord*, at *17; *see also Lewis v. Merry Maid*, No. 2015-06-0456, 2016 TN Wrk. Comp. App. Bd. LEXIS 19 (Tenn. Workers' Comp. App. Bd. Apr. 20, 2016)(panel ordered when employer did not refute employee's testimony that she felt back pain while working and told her supervisors of her pain).

Taken in its totality, the Court finds Mr. Simmons has come forward with sufficient evidence to show he is likely to prevail at a hearing on the merits regarding entitlement to a panel of physicians.

*Temporary disability benefits*

Mr. Simmons requested temporary total disability (TTD) from October 7, 2015, and ongoing. Under Tennessee law, to establish entitlement to TTD, Mr.

9

Simmons must show (1) he was totally disabled to work by a compensable injury; (2) a causal connection between the injury and his inability to work; and, (3) the duration of that period of disability. *Jones v. Crencor Leasing and Sales*, No. 2015-06-0332, 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Tenn. Workers' Comp. App. Bd. Dec. 11, 2015). At this time, Mr. Simmons has not come forward with any medical evidence providing a causal connection between his alleged injury and any inability to work. Thus, his claim for temporary disability benefits is denied at this time.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Simmons shall receive medical benefits from RHA for treatment of his August 5 injury by RHA providing a panel of physicians qualified to treat back injuries from which he might choose the authorized physician.

2. Mr. Simmons' request for temporary disability benefits is denied at this time.

3. This matter is set for a Scheduling (Status) Hearing on February 22, 2017, at 10:00 a.m. Central time.

**ENTERED this the 8th day of December, 2016.**

**Allen Phillips, Judge**
**Court of Workers' Compensation Claims**

Scheduling (Status) Hearing:

A Scheduling/Status Hearing has been set with **Judge Allen Phillips, Court of Workers' Compensation Claims. You must call toll-free at 731-422-5263 or toll-free 855-543-5038 to participate in the Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

11

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

## APPENDIX

Exhibits:
1. Medical record of Jackson-Madison Co. General Hospital;
2. MRI report of Jackson Clinic;
3. First Report of Injury dated October 13, 2015;
4. Notice of Denial of Claim for Compensation;
5. Wage Statement;
6. Screen-shots of text messages from Mr. Simmons' spouse and RHA;
7. Deposition of Mary Crayton;
8. Deposition of Larry Simmons;
9. Deposition of Aireale Donald;
10. Deposition of Eric Yarbrough;
11. Deposition of Patrick Simmons;
12. RHA's "Unusual Occurrence Initial Report Form" (dated October 7, 2015);
13. RHA "Witness Statement" of Eric Yarbrough; and
14. Memorandum completed by Gina Horner, RHA's Human Resources Director detailing notice issues.


Technical record:[3]
1. Petition for Benefit Determination;
2. Dispute Certification Notice;
3. Request for Expedited Hearing; and
4. Employer's Response to Petition for Benefit Determination (May 3, 2016).

---

[3] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 8th day of December, 2016.

| Name | Via Email | Service Sent To: |
|------|-----------|------------------|
| Gregory D. Mangrum, Esq., Attorney for Employee | X | mangrumlaw@comcast.com |
| Alex Elder, Esq., Attorney for Employer | X | alex@holleyelder.com |

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

14